1  ADLER LAW GROUP
   ERWIN E. ADLER (Bar No. 40638)
2  ELIZABETH A. SULLIVAN (Bar No. 212482)
   350 South Figueroa Street, Suite 557
3  Los Angeles, CA 90071
   Telephone: (213) 893-3900
4  Facsimile:  (213) 893-3910

5  Attorneys for Plaintiff
   CERTAIN UNDERWRITERS AT LLOYD'S, LONDON

6

7

8              **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12 | CERTAIN UNDERWRITERS AT | ) | Northern District Case No. Case No. |
   | LLOYD'S, LONDON, | ) | 4:05-CV-2377. |
13 | | ) | |
   | Plaintiff, | ) | |
14 | | ) | |
   | v. | ) | **JOINT STIPULATION OF CERTAIN** |
   | | ) | **UNDERWRITERS AT LLOYD'S,** |
15 | THE INSURANCE COMPANY OF THE | ) | **LONDON AND INSURANCE** |
   | STATE OF PENNSYLVANIA and DOES 1 | ) | **COMPANY OF THE STATE OF** |
16 | to 100, inclusive, | ) | **PENNSYLVANICA TO FILE** |
   | | ) | **AMENDED COMPLAINT** |
17 | Defendants. | ) | |
   | | ) | |

18

19

20      Whereas, Certain Underwriters at Lloyd's, London ("Underwriters") initially filed this

21 action against The Insurance Company of the State of Pennsylvania ("ICSOP") to obtain a

22 determination of the extent of ICSOP's obligation as an excess carrier and the latter's

23 obligation to assume the duty of paying amounts in excess of Underwriters' liability limit of

24 $1,000,000; and

25      Whereas, after filing the action, Underwriters has concluded that it questions the

26 reasonableness and necessity of the various billings presented by the contractors and

27 supervisors who undertook the effort to remediate the site; and

28      Whereas, to afford complete justice and eliminate duplication of effort by the courts

---
1
**STIPULATION**

and the parties to this action, Underwriters has concluded that the subcontractors and supervisors who presented the bills on their own behalf, as well as on behalf of others, should also be made parties to this action to explain the nature, necessity, and reasonableness of their billings; and

Whereas, no purpose would be served by having ICSOP file an addition answer to this amended complaint and the previously filed answer will be deemed a sufficient response to this amended complaint; and

Whereas a single pleading in this action by way of an amended complaint would expedite the pending action and eliminate potential inconsistencies with another action which has since been filed by DeNova which presented certain of the billings,

Now therefore, the parties agree as follows:

Plaintiff Certain Underwriters at Lloyd's, London ("Underwriters") and Defendants The Insurance Company of the State of Pennsylvania ("ICSOP") hereby stipulate that Underwriters are authorized to amend the complaint and stipulate that the attached amended complaint may be filed.

DATED: December_____, 2005     ADLER LAW GROUP
                                 ERWIN E. ADLER
                                 ELIZABETH A. SULLIVAN

                                 By:_____
                                     ERWIN E. ADLER
                                     Attorney for Plaintiff
                                 CERTAIN UNDERWRITERS AT LLOYD'S,
                                 LONDON

(signature continued on next page)

2
**STIPULATION**

1  DATED: December_____, 2005                MCCURDY & FULLER

2
                                              By:_____
3                                             KEVIN G. MCCURDY
                                              Attorney for Defendants
4                                             THE INSURANCE COMPANY OF
                                              THE STATE OF PENNSYLVANIA
5

6

7  **It is so ORDERED this 3 Day of January 2006**

8
   _____*Saundra B Armstrong*_____
9  Saundra Brown Armstrong, Judge
   United States District Court
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

3
**STIPULATION**

```
 1  ERWIN E. ADLER (Bar No. 40638)
    ELIZABETH A. SULLIVAN (Bar No. 212482)
 2  ADLER LAW GROUP
    350 So. Figueroa St., Suite 557
 3  Los Angeles, California 90071
    Telephone: (213) 893-3900
 4  Facsimile: (213) 893-3910

 5  Attorneys for Defendant
    Certain Underwriters at Lloyd's London
 6
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON,<br><br>                Plaintiff,<br><br>v.<br><br>INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation; DENOVA HOMES INC. a California Corporation; CHARLES I. RAUW; THE SUTTON GROUP; ADOBE GEOTECH; DIABLO SOIL ENGINEERS; NORTH COAST ENGINEERING; MILANI & ASSOC.; DAWSON ELECTRIC; ROBERT PYKE; SUBSURFACE CONSULTANTS, INC.; JT VAN SICKLE CO.; DESILVA GATES CONSTRUCTION; D&C BUILDERS UNLTD.; VELASQUEZ ENGINEERING CO.; ENGEO INC.; LOMBARD CONSULTING SERVICES, INC.; and DOES ONE through TWO HUNDRED inclusive,<br><br>                Defendants. | Northern District Case No. Case No. 4:05-CV-2377.<br><br>**DEFENDANT CERTAIN UNDERWRITERS AT LLOYD'S LONDON'S FIRST AMENDED COMPLAINT FOR:**<br>**1. DECLARATORY RELIEF**<br>**2. EQUITABLE SUBROGATION**<br>**3. EQUITABLE CONTRIBUTION**<br>**4. EQUITABLE INDEMNITY**<br>**5. MONEY LENT**<br>**6. BREACH OF ORAL CONTRACT** |

Certain Underwriters at Lloyd's, London ("Underwriters") allege as follows:

4

**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd

## NATURE OF ACTION

1. This is an action for declaratory relief against each of the defendants and for equitable subrogation, equitable contribution, equitable indemnity, money lent, and breach of oral contract against the Insurance Company of the State of Pennsylvania.

## JURISDICTION

2. This Court's jurisdiction over this amended complaint is based on diversity jurisdiction pursuant to 28 U.S.C. §1331 because Plantiff Certain Underwriters at Lloyd's London (Underwriters) have their principal place of business in London, England, Defendant Insurance Company of the State of Pennsylvania (ICSOP) is incorporated and has its principal place of business in the State of Pennsylvania, and Defendant DeNova Homes, Inc. (DeNova) is incorporated and has its principal place of business in California. The other defendants also reside in California. Additionally, the amount in controversy is in excess of $75,000. None of the defendants is a resident, incorporated in or has its principal place of business in the United Kingdom.

3. This case furthermore, is a related case to the action which was recently removed to this District, i.e., *DeNova Homes, Inc. v. Certain Underwriters at Lloyd's et al*, Case No.: C 05-04114 MMC. Like this action, that action also concerns the same parties, claims of insurance coverage, and a declaration of rights arising out of the incident at the Marina, and will involve a duplication of effort relating to the claims involved in this action if the matters are handled before different judges.

## PARTIES

4. At all times herein mentioned, Underwriters were and have been authorized to issue liability insurance policies to various policyholders in the State of California.

5. Plaintiff is informed and believes and thereon alleges that defendant

5

**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd

ICSOP is organized and existing under the laws of a state other than California with its principal place of business in Pennsylvania and is duly licensed and authorized to conduct, and is conducting, the business of insurance under the laws of the State of California and thus, this court has jurisdiction .

6. Plaintiff is informed and believes and thereon alleges that the true names, capacities, and identities of Doe defendants 1 through 200, inclusive, whether individual, partnership, corporate or otherwise, are at the present time unknown to plaintiff, and therefore plaintiff sues said Doe defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of said Doe defendants is responsible in some manner for the matters herein alleged. At such time as the true names, capacities, and identities of said Doe defendants become known, plaintiff will seek leave of the Court to amend this complaint accordingly.

7. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, that Does One through One Hundred was the agent, servant, employee, member, shareholder, officer, director, joint venture, and/or alter ego of ICSOP, and was acting within the scope of such agency and/or capacity, and such that the acts of the defendants were authorized and ratified by ICSOP.

8. Underwriters are informed and believe and thereon allege that DeNova is, and at all times relevant herein was, a California corporation with its principal place of business located at 333 Civic Drive, Pleasant Hill, California 94523; DeNova is a general contractor specializing in the construction of homes and residential developments in the greater San Francisco Bay Area. Underwriters paid DeNova various sums of money that Underwriters understood had been reasonably and necessarily expended to remediate the damage which DeNova had caused to the nearby marina as alleged in greater detail below.

9. Underwriters is informed and believes and thereon alleges that all remaining defendants, including Does One Hundred One through Two Hundred, as a

result of their roles as general contractors, subcontractors, or otherwise connected with the remediation, directly or indirectly, received money from Underwriters in connection with remediating the damage caused by DeNova. These entities and persons include the following, each of whom are doing business in this district, but Underwriters is not informed as to the nature of the form, corporate or otherwise, adopted by these persons or entities to do business:

  a. Charles. I. Rauw, an individual:

  b. The Sutton Group;

  c. Adobe Geotech;

  d. Diablo Soil Engineers;

  e. North Coast Engineering;

  f. Milani & Associates;

  g. Dawson Electric;

  h. Robert Pyke;

  i. Subsurface Consultants, Inc.;

  j. J.T. Van Sickle Co.;

  k. Desilva Gates Construction;

  l. D&C Builders Unltd.;

  m. Velasquez Engineering Col;

  n. Engeo Inc.;

  o. Lombard Consulting Services, Inc.; and

  p. DOES 101 through 200, inclusive.

Underwriters paid the money to the foregoing defendants on the basis that they understood that these defendants had represented that these sums had been reasonably and necessarily incurred to satisfy the underlying claim against DeNova and had been reasonably and necessarily expended to remediate the damage which DeNova had caused to an adjacent marina.

## UNDERLYING FACTUAL ALLEGATIONS

10. DeNova owned and developed certain waterfront real property in Vallejo, California for single family houses commonly known as The Marina Estates.

11. Plaintiff Underwriters issued a commercial general liability policy, No. 618/A01635001/001, to DeNova for the policy period from July 1, 2000 to July 1, 2001 (the Underwriters Policy). A true and correct copy of the Underwriters Policy is attached hereto as Exhibit "A." The Underwriters Policy has a Deductible Amount of $5,000 per occurrence, and an Occurrence Limit of $1,000,000.

12. Defendant DeNova obtained an excess insurance policy from defendant ICSOP, No. 4200-7412, for the same period (the ICSOP Policy). A true and correct copy of the ICSOP Policy is attached hereto as Exhibit "B."

13. The ICSOP Policy has an Occurrence Limit of $5,000,000, no Self-Insured Retention, and provides in part:

> "We will pay on behalf of the insured those sums in excess of the Retained Limit that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the insured under the insured contract because of bodily injury, property damage, personal injury or advertising injury that takes place during the Policy Period and is caused by an occurrence happening anywhere in the coverage territory. The amount of damages we will pay is limited as described in SECTION III. LIMITS OF INSURANCE."

14. Section III. "LIMITS OF INSURANCE" of the ICSOP Policy further provides, in part:

> "D. Retained Limit
>
> We will be liable subject to an amount not exceeding the Each Occurrence Limit as stated in the Declarations:
>
> 1. Only for that portion of damages in excess of the

8

**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd

> total of the applicable limits of insurance of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of insurance of any other underlying insurance providing coverage to the insured; or
>
> 2. In the event of damages covered by this Policy but not covered by any underlying insurance, we will be liable for the total of all damages covered by this Policy; . . .."

Other than automobile liability and employer's liability policies from other insurers, the Underwriters Policy with an Each Occurrence limit of $1,000,000 is the only coverage listed in the ICSOP Policy's Schedule of Underlying Insurance.

15. Section III. "LIMITS OF INSURANCE" of the ICSOP Policy further provides:

> "If the applicable limits of insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the insured or any applicable Self-Insured Retention are reduced or exhausted by payment of one or more claims or suits that would be insured by our Policy we will:
>
> 1. In the event of reduction, pay in excess of the reduced underlying limits of insurance or any applicable Self-Insured Retention; or
>
> 2. In the event of exhaustion of the underlying limits of insurance or any applicable Self Insured Retention, continue in force as underlying insurance."

16. On or about May 7, 2001, a landslide occurred at DeNova's Marina Estates property, depositing earth in the adjacent marina commonly known as the Glen Cove Marina (the Marina) and thereby causing damages (the Incident).

17. On or about May 22, 2001, after the Marina had made a claim against

9
**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd

DeNova about the Incident, the latter tendered the claim to Underwriters' representative, WestCo Claims Management (Westco), representing as follows:

> "Insd working on building a retaining wall between [the Marina Estates property] and marina. During low tide retaining wall sunk when land moved & filled in under the marina dock. No boat dmg but dmg to marina. Dredging will be required under docks. Insd built retaining wall based on architect and city specifications."

18. Underwriters started investigating the claim while reserving its rights. To this end, on or about May 31, 2001, Westco contacted consulting engineer Charles Rauw, a specialist in marine engineering. On June 2, 2001, Mr. Rauw submitted to Westco a confirming proposal to provide coastal engineering services to assist with determining the cause of the Incident and the liability of any potential parties, to inspect and take photos of the area, and to provide other services as may be requested during the course of the investigation and claims settlement. Mr. Rauw's work was to be performed on a time-and-material basis.

19. Mr. Rauw photographed the site on or about June 2, 2001. On or about June 4, 2001, he sent his analysis of the cause of the slope failure to Westco, explaining that DeNova's construction of new homes at Marina Estates involved a significant amount of fill adjacent to the marina basin. He indicated that DeNova had placed fill on top of old dredge material which, in turn, sat atop soft bay muds. Further, the fill had surcharged the weak bay muds and dredge materials until they failed and moved into the marina basin. The movement of the mud, in turn, moved piles and docks of the marina which was claimed to have damaged certain boats moored in the marina in addition to the marina itself. After his review, Mr. Rauw concluded,

> "The block retaining wall reportedly failed by moving downward, as the underlying soil moved outward toward the marina basin. However,

the retaining wall was not the cause of the failure. The surcharging of the land adjacent to the marina was, in my opinion, the cause of the failure."

Mr. Rauw issued a field report dated June 9, 2001, concluding that the insured, i.e. De Nova Homes, was responsible for the failure. He reiterated his findings that "the failure occurred as a result of fill being placed onshore, which created a load on top of the existing soils until the load exceeded the capacity of the soils to support the load."

20. Shortly after Mr. Rauw completed his investigation, Underwriters began to engage in remediation efforts. Thus, in June 2001, the first phase of these remediation efforts began to respond to the Marina's claim of property damage. These efforts included cleaning and dredging the marina, restoring the Marina pier, and remediating and stabilizing the slope on shore and below the waterline to prevent further damage to the Marina.

21. Since DeNova did not have the requisite marine experience, in the first week of June, 2001, Westco retained Mr. Rauw to assist in directing the remediation efforts, to conduct peer reviews of any remediation plans suggested by municipal authorities or experts retained by others, and to determine if the dredging, repair, and replacement costs were reasonable. To this end, on or about June 6, 2001, Mr. Rauw met with geologists, geotechnical and structural engineers to determine a course of remediation and continued to assist in the remediation efforts, hiring several engineers to assist him, with the permission of Westco.

22. Thereafter, Mr. Rauw continued to assist in directing the remediation efforts. Thus, he monitored the activities of The Sutton Group, the team of engineers DeNova hired to develop the plans and specifications for the slope remediation repair, until on or about September 12, 2001 when DeNova instructed The Sutton Group to discontinue any further work. DeNova directed The Sutton

11
**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd

1  Group to discontinue those efforts because a design team under Mr. Rauw's
2  direction as Project Manager (and the remediation team assembled by Westco)
3  would continue with the next phase of operations. Repair of the slope under Mr.
4  Rauw's direction was completed by June 2, 2004; however, repairs to the dock and
5  dredging have continued until the present.

6      23. Throughout the remediation period, DeNova, Mr. Rauw, and all other
7  defendants submitted bills to Underwriters, either directly or indirectly, for their
8  services. Underwriters believes that its expenditures have exceeded $1,500,000 in
9  remediating or otherwise resolving the claims made against DeNova as a result of
10 the Incident– well above the $1,000,000 policy limit.

11      24. Prior to the repairs being completed, the claim was tendered to the
12 excess insurance carrier , i.e. ICSOP, because it appeared that the total indemnity
13 payments for repairs would exceed the Underwriters Policy limit of $1,000,000.

## FIRST CAUSE OF ACTION
### (For Declaratory Relief Against ICSOP)

17      25. Plaintiff realleges paragraphs 1 through 24 of this complaint as
18 though set forth in full herein.

19      26. Notwithstanding that ICSOP, as the excess carrier, is contractually
20 obligated pursuant to the ICSOP Policy to indemnify such repair costs once they
21 exceed the Underwriters Policy limit of $1,000,000, and the indemnity costs
22 exceeded that policy (and there are no other applicable underlying policies),
23 ICSOP nevertheless repeatedly failed and refused to accept tender of the claim and
24 pay for indemnity costs in excess of Underwriters' $1,000,000 limit. Throughout
25 the remediation process of repairing the damage done by the insured, DeNova, to
26 the marina, Underwriters acknowledged that it was responsible for remediating the
27 damage up to its policy limits; thus, there was no suit by any third party, including

12
**AMENDED COMPLAINT OF UNDERWRITERS**

the owner of the Marina, i.e. Western Water Ways.

27. Notwithstanding the repairs being conducted, Western Water Ways filed suit against DeNova and various other defendants in California state court, Case No. FCS022104, seeking injunctive relief and damages allegedly caused by the Incident. These claims included damage to the Marina's real property, piers and other improvements, and loss of income and profits. Mr. Rauw was not involved nor retained to formulate the defense to the action.

28. The Western Water Ways lawsuit against DeNova was settled and the parties entered into a Settlement Agreement and Release of Claims on May 28, 2004. Prior to the settlement – because of ICSOP's refusal to acknowledge that Underwriters had exhausted their policy – the insurers, i.e. ICSOP and Underwriters, entered into an agreement to control their respective positions at that at the settlement conference. ICSOP's representative would negotiate Western Water Ways' loss of income claim. Underwriter's representative would negotiate Western Water Ways' claim relating to the Marina repairs. After the settlement were effect, the parties would allocated between themselves the indemnity payments made by Underwriters. More specifically, under the terms of the Underwriters Policy, i.e., Underwriters would be responsible for exhausting its $1,000,000 limit in indemnity payments and ICSOP would pay, under its excess policy, for the cost of repairs in excess of Underwriters' $1,000,000 limit.

29. Notwithstanding the foregoing, ICSOP has failed and refused to pay its share of the amounts paid in indemnity in excess of Underwriters' $1,000,000 limit. ICSOP, to avoid paying any portion of its policy (although the remediation has been effected), has erroneously and disingenuously claimed that all of Mr. Rauw's efforts in supervising the remediation was part of the site "investigation." It has moreover so contended (although he completed his investigation a few days after he was requested to do so); thus, ICSOP theorizes it can avoid its obligation to pay these indemnification expenses by asserting that the cost of Mr. Rauw's

13

**AMENDED COMPLAINT OF UNDERWRITERS**

efforts in supervising the remediation should be recharacterized as defense expenses (although there was no lawsuit pending during the first two years he was acting as project manager). Thus, ICSOP asserts Underwriters should absorb the cost of his efforts as "defense expenses" so that ICSOP could avoid paying any amounts on its excess policy.

30. As a direct and proximate result of the failure of ICSOP to accept the tender, and to pay for indemnity in excess of $1,000,000, Underwriters has been required to sustain the entirety of the burden of the indemnity payments in order to preserve the value of the work and to prevent further injury and damage. To date, those indemnity payments have cost Underwriters amounts in excess of the jurisdictional limits of this court and ICSOP, to date, has refused to comply with its contractual obligations to pay for remediation costs in excess of Underwriters' policy limits of $1,000,000.

31. Underwriters and ICSOP dispute their respective rights and responsibilities to indemnify DeNova and make indemnification payments. Underwriters contends that ICSOP, pursuant to the terms of the ICSOP Policy and also as a result of ICSOP having agreed with Underwriters to pay for indemnity costs in excess of the Underwriters Policy indemnity limit of $1,000,000, is obliged to pay for those indemnity costs in excess of $1,000,000, including but not limited to those payments for repair work done by Mr. Rauw, which indemnity costs at this time exceed the jurisdictional limits of this court.

32. Underwriters is informed and believes and thereon alleges that ICSOP disputes the contentions in the immediately preceding paragraph. Underwriters is informed and believes and thereon alleges that ICSOP, although it agreed to cover DeNova as an excess insurer pursuant to the terms of the ICSOP Policy, and further agreed with Underwriters to reimburse Underwriters for the indemnity payments made in excess of $1,000,000, denies that it is obliged to pay the costs of indemnifying DeNova, including the costs incurred by Mr. Rauw.

33. A true and actual controversy exists with respect to the disputes as described in paragraphs 35 and 36, above.

34. Underwriters lacks an adequate remedy at law, and a declaration by the Court is necessary and appropriate so that the parties can ascertain their rights with regard to the disputed contentions set forth in paragraphs 35 and 36, above.

## SECOND CAUSE OF ACTION

### (Equitable Subrogation Against ICSOP)

35. Underwriters hereby incorporates the allegations of paragraphs 1 through 24 of this complaint by this reference as though fully set forth herein.

36. Pursuant to the ICSOP Policy, ICSOP alone is liable and indebted to pay DeNova's claim for indemnity payments exceeding Underwriters' policy limit of $1,000,000. To preserve the insured's interests, to complete the remediation already completed and in progress and to prevent further damages, Underwriters was obligated and required to pay indemnify DeNova for the damage it had caused to the marina. Had Underwriters not paid those amounts, the insured would have been left at risk because ICSOP – predicated upon the insurers' dispute over ICSOP's duty to pay any indemnification under its excess policy and its assertion Underwriters was required to pay those sums under their policy – had refused to make such indemnity payments which Underwriters contends ICSOP should have paid. Underwriters have suffered damages in excess of jurisdictional limits of this court as a result of ICSOP's failure to pay DeNova's claim and justice dictates that the loss be shifted entirely from Underwriters to ICSOP. As a result of the foregoing, Underwriters have succeeded to the rights of DeNova as against ICSOP and are thus, entitled to recover from ICSOP on the basis of being so equitably subrogated.

37. Plaintiff Underwriters requests this Court to order ICSOP to reimburse Underwriters for the full amount of the amounts paid by Underwriters in

excess of the jurisdictional limits of this court and to assume any further cost of indemnifying DeNova.

### THIRD CAUSE OF ACTION

(Equitable Contribution Against ICSOP)

38. Underwriters hereby incorporates the allegations of paragraphs 1 through 24 of this Complaint by this reference as though fully set forth herein.

39. As a co-insurer of DeNova, and pursuant to the ICSOP Policy and ICSOP's specific agreement with Underwriters to contribute to DeNova's indemnity, ICSOP is liable to contribute to the costs of DeNova's indemnification, to wit those indemnity payments in excess of $1,000,000 which are in excess of the jurisdictional limits of this court. To to preserve an interest, to preserve the remediation already completed and in progress and to prevent further damages, Underwriters was obligated and required to pay sums in excess of the jurisdictional limits of this court which ICSOP should have paid. Underwriters suffered damages in the amount as a result of ICSOP's failure to pay its portion of the indemnity, and justice dictates that ICSOP contribute this portion of indemnity and accordingly reimburse Underwriters in the amounts paid in excess of their limits.

### FOURTH CAUSE OF ACTION

**(Equitable Indemnity Against ICSOP)**

40. Underwriters hereby incorporates the allegations of paragraphs 1 through 24 of this Complaint by this reference as though fully set forth herein.

41. Pursuant to the ICSOP Policy and ICSOP's agreement with Underwriters, ICSOP is liable for the costs of DeNova's indemnification exceeding $1,000,000 which are in excess of the jurisdictional limits of this court. ICSOP wrongfully failed to pay the aforementioned indemnity costs although it is contractually responsible for paying all of these costs. ICSOP's refusal to comply

with its contractual obligations to the insured, i.e. DeNova and its agreement with Underwriters immediately preceding the settlement conference has resulted in loss to Underwriters who, in order to preserve an interest, to preserve the remediation already completed and in progress and to prevent further damages was obliged to pay amounts in excess of the jurisdictional limits of this court which should have been paid by ICSOP.

42. Underwriters suffered damages in amounts in excess of the jurisdictional limits of this court as a direct proximate result of ICSOP's failure, and justice dictates that ICSOP reimburse Underwriters in that amount.

## FIFTH CAUSE OF ACTION

### (Money Paid Against ICSOP)

43. Underwriters hereby incorporates the allegations of paragraphs 1 through 24 of this Complaint by this reference as though fully set forth herein.

44. Within the last two years, ICSOP became indebted to Underwriters for sums in excess of the jurisdictional limits of this court for money paid by Underwriters to remediate the marina at ICSOP's request.

45. Underwriters has repeatedly demanded payment from ICSOP, the last demand being made within the last thirty days.

46. No payment has been made by ICSOP to Underwriters, and there is now owing sums in excess of the jurisdictional limits of this court together with interest thereon as allowed by law.

## SIXTH CAUSE OF ACTION

### (Breach of Oral Contract Against ICSOP)

47. Underwriters hereby incorporates the allegations of paragraphs 1 through 24 of this Complaint by this reference as though fully set forth herein.

48. During the time of the settlement of Western Water Ways Inc.'s lawsuit against DeNova, ICSOP and Underwriters entered into an oral contract,

supported by adequate consideration and memorialized in a writing signed by ICSOP's representative, that ICSOP would reimburse Underwriters for those DeNova indemnity payments made by Underwriters in excess of $1,000,000.

49. Underwriters has performed all covenants, conditions, and agreements required on its part to be performed under its agreement with ICSOP, except as such performance was excused, prevented, or waived by ICSOP.

50. ICSOP breached said oral contract by failing and refused to pay any portion of the indemnity payments made by Underwriters in excess of $1,000,000 despite demand therefor.

51. As a direct and proximate result of ICSOP's breach, Underwriters has been damaged in a sum exceeding the jurisdictional limits of this court.

## SEVENTH CAUSE OF ACTION

### (For Declaratory Relief Against All Defendants, except ICSOP)

52. Plaintiff Underwriters realleges paragraphs 1 through 24 of this complaint as though set forth in full herein.

53. Underwriters has paid in excess of $1,500,000 on the basis of representations by the various defendants that reasonably and necessarily expended those sums to remediate or otherwise resolve the damage claims against DeNova arising as a result of the Incident. The defendants other than ISCOP assert that all of these payments were reasonably and necessarily incurred in remediating the damage caused by DeNova. Underwriters, based upon its review of the various statements and payments made by them, believes that some of these payments have not been reasonably and necessarily incurred in remediating the damage to the property, but cannot determine the amount which has not been properly expended. Thus, Underwriters seeks to determine the amounts received by each of these defendants other than ICSOP and whether these payments were reasonably and necessarily incurred in remediating the damage caused by DeNova

and thus, whether it was required under the Underwriters Policy to pay the amounts it actually paid.

54. Underwriters and defendants dispute whether the payments made by Underwriters were expended reasonably and necessarily to remediate the damage caused by DeNova.

55. Underwriters lacks an adequate remedy at law, and a declaration by the Court is necessary and appropriate so that the parties can ascertain their rights with regard to the disputed contentions set forth above.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as follows:

1. For a declaration stating whether all payments to the defendants were reasonable, necessary, and appropriate to remediate the damage caused by DeNova, and if not, declaring which payments to which defendants do not meet that criterion and in what amount.

2. For a declaration as to any payments made to the defendants that were not reasonable, necessary, and appropriate, stating which defendant is liable to plaintiff Underwriters, and requiring appropriate restitution to Underwriters.

3. For a declaration of the rights and responsibilities of respectively, Underwriters and ICSOP to indemnify DeNova.

4. For an order that ICSOP pay any costs in excess of $1,000,000 which have been incurred and which may be incurred to indemnify DeNova.

5. For an order that ICSOP reimburse Underwriters for those indemnity payments in excess of $1,000,000 which Underwriters has incurred in indemnifying the remaining defendants.

6. For the maximum interest allowed by law according to proof.

7. For costs of suit incurred herein.

8. For such other and further relief as the Court may deem just and proper.


DATED: December _____, 2005    ADLER LAW GROUP
                                                   ERWIN E. ADLER
                                                   ELIZABETH A. SULLIVAN


By: _____
     ERWIN E. ADLER
     Attorney for Plaintiff
     Certain Underwriters at Lloyd's London

20
**AMENDED COMPLAINT OF UNDERWRITERS**

Underwriters - Notice of Removal.wpd