**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON,<br><br>        Plaintiff,<br><br> v.<br><br>CHARLES I. RAUW,<br><br>        Defendant. | No. C 05-2377 SBA<br><br>**ORDER**<br><br>[Docket Nos. 111, 115, 118] |

Defendant Charles I. Rauw has filed a motion for sanctions [Docket No. 111] against plaintiff Certain Underwriters at Lloyd's London (Lloyds) under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, or, in the alternative, under the Court's inherent authority to impose sanctions. In a separately filed motion, Lloyds seeks similar sanctions against Rauw [Docket No. 115] based upon Rauw's act of filing his Rule 11 motion. After reading and considering the arguments presented by the parties, the Court finds this matter appropriate for resolution without a hearing. *See* FED. R. CIV. P. 78. For the reasons that follow, the motions for sanctions by both parties are DENIED.

## BACKGROUND

This case arises out of an insurance dispute following a mudslide in May 2001 at the Glen Cove Marina in Vallejo, California. The plaintiff is Certain Underwriters at Lloyd's London (Lloyds), which provided a commercial liability insurance policy for DeNova Homes, Inc., the real estate developer that owned the waterfront property where the mudslide occurred. *See* Docket No. 15 at 4-5. The maximum amount Lloyds would have to pay under the insurance policy was $1 million. *Id* at 5.

In order to obtain additional coverage over and above the $1 million policy of Lloyds, DeNova secured a second insurance policy from the Insurance Company of the State of Pennsylvania (ICSOP). *Id*; *see* Docket No. 22 at 2. This second policy provided "umbrella" coverage that would kick into effect once the coverage of the underlying Lloyds policy had been exhausted.

After the mudslide in May 2001, the Glen Cove Marina filed a claim against DeNova to clean up the earth that had fallen into the marina. *See* Docket No. 15 at 6. DeNova, in turn, tendered the claim to WestCo Claims Management (WestCo), a third-party claims administrator employed by Lloyds. *Id*.

WestCo began the process of investigation and claims settlement to determine the cause of the mudslide, the costs of cleanup and the potential liability of any parties involved in the development of the waterfront land. In the course of its work, WestCo contacted Charles Rauw, an engineering consultant who specializes in marine engineering. After submitting his report detailing the cause and liability of the mudslide, Rauw was again retained to help guide the cleanup process, which involved extensive marine engineering knowledge and numerous subcontractors. *Id*. at 7-8.

As Rauw and the various subcontractors continued to submit invoices to Lloyds and its agents, Lloyds began to question whether the amounts it had paid exceeded its $1 million policy limit. *See* Docket No. 116, ¶ 3. To sort through its accounting concerns, Lloyds hired Kimberly Becker, a forensic accountant who specialized in construction financing. *See* Docket No. 55 at 1. Becker eventually concluded that Lloyds had paid approximately $500,000 more than it was required to under the insurance policy for DeNova. *Id.* Additionally, Lloyds claimed it discovered evidence of double- and triple-billing. *See* Docket No. 116, ¶ 4.

Lloyds filed its original complaint in Los Angeles County Superior Court against ISCOP to recapture the amount it had paid in excess of its $1 million policy limit. *See* Docket No. 1. The case was then removed to federal district court, where ISCOP filed a cross-claim, seeking declaratory and equitable relief to resolve all payment issues on the mudslide project. *See* Docket Nos. 1, 23.

As this case was pending, Lloyds or its agents made several attempts to gather invoices from Rauw and some of the subcontractors to determine the amount of overpayments. *See* Docket No. 70, Adler Decl. ¶¶ 4,5. When these attempts proved unsuccessful, Lloyds filed an amended complaint on January 12, 2006, adding Rauw and more than a dozen subcontractors as new defendants. *See* Docket No. 15.

Based upon knowledge that the parties were in settlement negotiations, this Court eventually

issued an order conditionally dismissing the case on May 4, 2007.  *See* Docket No. 108.  Several weeks later, on July 20, 2007, Rauw filed a motion for sanctions against Lloyds, claiming Lloyds had not conducted sufficient investigation before drawing Rauw into the lawsuit.  *See* Docket No. 112.  Lloyds filed papers opposing the motion on August 20, 2007, seeking similar sanctions against Rauw based upon Rauw's own motion for sanctions.  *See* Docket No. 115.

The sole issue before this court is whether the motions for sanctions by both parties possess any merit under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. 1927 or under this Court's inherent authority to issue sanctions.

### LEGAL STANDARDS

Rule 11(b) of the Federal Rules of Civil Procedure provides that

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Rule 11(c) further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.  FED. R. CIV. P. 11(C).

The United States Code provides that

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the

3

> proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. 1927. Federal courts also possess the inherent authority "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn,* 6 Wheat. 204, 227 (1821). This inherent authority is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630-631 (1962). Such authority includes the power to *sua sponte* assess sanctions for bad-faith conduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Zaldivar v. Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1991), *overruled on other grounds by* 496 U.S. 384 (1990).

## ANALYSIS

**A.     Timeliness**

It is necessary first to address the timeliness of Rauw's motion for Rule 11 sanctions, which came more than two months after this Court issued an order conditionally dismissing the suit based upon the knowledge that the parties were in the settlement negotiation stages. *See* Docket No. 108. In support of his argument that the motion is timely, Rauw recites a portion of the 1983 Advisory Committee Notes of Rule 11:

> A party seeking sanctions should give notice to the court and the offending party promptly upon discovering a basis for doing so. The time when sanctions are to be imposed rests in the discretion of the trial judge. However, it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation. . . .

FED. R. CIV. P. 11, 1983 Comm. Notes.

Prior to 1993, this section arguably expanded the time frame within which a party could file a Rule 11 motion, even though it focuses primarily on the time "when sanctions are to be imposed" and not when a sanctions motion can be filed. Fortunately, the 1993 amendments to Rule 11 provide a much clearer response to the timeliness questions left unanswered by the 1983 Advisory Committee Notes. The 1993 amendments squarely address the issue:

4

> Ordinarily the motion [for sanctions] should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely . . . Given the safe harbor provisions . . . a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."

FED. R. CIV. P. 11, 1993 Comm. Notes (citations omitted). Considering these 1993 amendments, the Ninth Circuit has explained that "[i]n light of the clear language and intent of the amended Rule, we agree with the Sixth Circuit that a party cannot wait until after summary judgment to move for sanctions under Rule 11." *Barber v. Miller*, 146 F.3d 707, 711 (9th Cir. 1998) (quoting *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997), *cert. denied,* 522 U.S. 1046 (1998).

In the present case, the question is whether this Court's dismissal of the Lloyds lawsuit[1] constitutes a "conclusion of the case" as these words are used in the 1993 Advisory Committee Notes of Rule 11. In *Barber*, the Ninth Circuit equates summary judgment with the "conclusion of the case" for Rule 11 timeliness purposes. But the backdrop in the present case is not summary judgment – it is an order dismissing the case *with prejudice*. *See* Docket No. 108 (emphasis added). A dismissal with prejudice can properly be considered a "conclusion of the case" in the context of Rule 11 because, as the Ninth Circuit observed in *Barber,*

> The purpose of [Rule 11's safe harbor clause] is to give the offending party the opportunity, within 21 days after service of the motion for sanctions, to withdraw the offending pleading and thereby escape sanctions. A motion served after the complaint had been dismissed did not give [the opposing party] that opportunity.

*Barber,* 146 F.3d at 710. Lloyds had no opportunity to withdraw its "offending pleading" within 21 days of Rauw's Rule 11 motion because the case had already been dismissed. Therefore, Rauw's motion is untimely.

To support his plea for timeliness, Rauw cites *Jones v. International Riding Helmets*, 49 F.3d 692 (11th Cir. 1995) for the proposition that it is appropriate to use post-filing facts to establish that a pleading has been filed without reasonable inquiry. *See* Docket No. 118 at 5-6. Aside from misrepresenting this case as a Ninth Circuit decision, Rauw fails to show how the holding of *Jones*

---

[1] *See* Docket No. 108.

has anything to do with the timeliness of a Rule 11 motion filed after a case has been dismissed with prejudice. Even if *Jones* expressly stated that a post-dismissal filing of a Rule 11 motion was timely, it certainly does not address a case where, as here, a party files a sanction motion many months after discovering all relevant post-filing facts. Rauw bases his Rule 11 argument primarily on comments by Lloyds' attorney, Erwin Adler, and on the results of the report issued by Lloyds' forensic accountant. *See* Docket No. 118 at 4-6. But the accountant's report was published in April 2006,[2] and Adler's comments were made in August 2006.[3] Rauw provides no explanation why his Rule 11 motion came in July 2007, almost a year after discovering most of the facts on which to base his motion.

**B.      Rule 11's Safe Harbor Provision**

Even if Rauw's motion for sanctions was somehow timely, it does not conform to the strict procedural guidelines of Rule 11(c)(1)(A) of the Federal Rules of Civil Procedure. Rule 11(c)(1)(A) provides:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected. If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion.

The Advisory Committee notes further highlight the importance of this procedural requirement:

> To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion. In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

---

[2] *See* Docket No. 70, Adler Decl., ¶ 5.

[3] *Id.*

6

FED. R. CIV. P. 11, ADV. COMM. NOTES, 1993 AMEND.

The procedural dictates of Rule 11 are mandatory. *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 789 (9th Cir. 2001); *Barber*, 146 F.3d 707. In *Radcliffe,* the Ninth Circuit explains its prior holding in *Barber*:

> Although a defendant had given informal warnings to the plaintiffs threatening to seek Rule 11 sanctions, these warnings did not satisfy the strict requirement that a motion be served on the opposing party twenty-one days prior to filing. It is the service of the motion that gives notice to a party and its attorneys that they must retract or risk sanctions."

*Radcliffe,* 254 F.3d at 789.[4]

In his reply to Lloyds' opposition, Rauw argues that he clearly gave advance notice to Lloyds of his intent to pursue Rule 11 sanctions.[5] *See* Docket No. 118 at 6. Rauw is entirely correct. But notice of intent in the form of letters or telephone conversations, under Ninth circuit jurisprudence, does not satisfy the procedural requirements of Rule 11's "safe harbor" provisions. As the *Barber* court explained, "it would therefore wrench both the language and purpose of the amendment to [Rule 11] to permit an informal warning to substitute for service of a motion." *Id.* at 710. The Ninth Circuit case cited by Rauw – rather than contradict the procedural mandates outlined in *Radcliffe* and *Barber* – actually supports them. Under Rule 11, "[t]he movant serves the allegedly offending party with a filing-ready motion as notice that it plans to seek sanctions." *Truesdell v. Southern California Permanente Medical Group*, 293 F.3d 1146, 1151 (9th Cir. 1992).

Rauw further argues that, even if he did not follow every letter of Rule 11's procedural mandates, Lloyds was not prejudiced by such an error and therefore sanctions are still permitted. *See* Docket No. 118 at 6-7. But prejudice is not the correct legal test under Rule 11 -- the test is simply whether the moving party has served a "filing-ready" motion to the opposing party 21 or

---

[4] The *Radcliffe* court further held that "the fact that the plaintiffs had advance warning that Rainbow objected to their conspiracy allegation did not cure Rainbow's failure to comply with the strict procedural requirement of Rule 11(c)(1)(A)." *Id.* at 789.

[5] The e-mail from Rauw's attorney to Lloyds' attorney clearly gives Lloyds an informal warning of Rauw's intent to file a Rule 11 motion. *See* Docket No. 119, Ex. F.

7

more days before it is filed with the court. *Truesdell*, 293 F.3d at 1151.

## C.     The Merits

Even if Rauw's motion somehow overcame its timeliness and procedural deficiencies under Rule 11, it still bears the burden of showing Lloyds' amended complaint was filed frivolously or for an improper purpose. Rule 11 sanctions are appropriate "when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir.1997). Frivolous filings are "those that are both baseless and made without a reasonable and competent inquiry." *Id.* An attorney has a duty to conduct a reasonable factual investigation prior to filing a complaint. *Christianson v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Such a factual investigation is "an inquiry reasonable under all the circumstances of a case." *Townshend v. Holman Consulting Corp.*, 929 F.2d 1358, 1364 (9th Cir. 1990) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990) (citations omitted). With these standards in mind, it is important to note that "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust v. A-C Company*, 859 F.2d 1336, 1345 (9th Cir.1988).

In order to show it conducted a reasonable inquiry before the complaint was filed, Lloyds offers proof of its multiple attempts to examine the documents in Rauw's possession. *See* Docket No. 117, Ex. A. Lloyds also claims that its preliminary investigations into the marina mudslide project, most of which came before the January 1, 2006 filing of the amended complaint, resulted in a finding of significant overpayments. *See* Docket No. 70, Adler Decl., ¶ 2. This finding could reasonably establish a basis for a request for declaratory relief against Rauw because Rauw actively resisted turning over documents, even though Rauw's fees were paid by Lloyds' third-party agents.[6]

While Rauw initially resisted turning over documents, his attorney argued that the proper

---

[6]Lloyds worked with at least two different third-party administrators throughout the mudslide project: WestCo and the Devonshire Group. *See* Docket Nos. 120, ¶ 2, 116, ¶ 4.

way to obtain such records from Rauw would be through the use of a subpoena for business records. *See* Docket No. 117, Ex. E. This strategy, however, was considered and rejected by Lloyds' attorneys for multiple reasons. *See* Docket No. 116, ¶ 10. Since Lloyds did weigh the use of a subpoena for business records, and since it did conduct preliminary fact-finding efforts to discover the status of payments on the mudslide project, Lloyds did not act improperly in naming Rauw in its request for declaratory relief. Lloyds' amended complaint also was not frivolous because a preliminary investigation revealed Rauw likely possessed documents necessary to sort out Lloyds' financial tangle. *See* Docket No. 115 at 4-6.

Furthermore, Rauw offers no legal support for his contention that, in an effort to obtain necessary documents, a subpoena is a more appropriate vehicle than discovery pursuant to an amended complaint in the context of a request for declaratory relief.[7] Both legal vehicles place a similar burden on Rauw -- he still must seek out and produce the documents, whether they're locked away in storage or stacked in front of him on his desk. Absent proof to the contrary, the Court cannot agree that, under the circumstances, Lloyds' choice of a request for declaratory relief, rather than a subpoena for business records, was made to harass Rauw, was made frivolously, or was made for some other improper purpose in violation of Rule 11(b).

**D.     The Court's Authority Under 28 U.S.C. 1927**

Section 1927 of Title 28 of the United States Code permits a federal district court to sanction an attorney personally who "multiplies the proceedings in any case unreasonably and vexatiously." A district court may impose sanctions under section 1927 only on a showing of the attorney's recklessness or bad faith. *See Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829-32 (9th Cir.1986) (comparing section 1927 with Fed.R.Civ.P. 11, which does not require bad faith); *Optyl Eyewear Fashion International Corp. v. Style Cos.*, 760 F.2d 1045, 1048 (9th Cir.1985); *United States v.*

---

[7]Neither party cites any legal authority addressing this issue.

9

*Blodgett*, 709 F.2d 608, 610 (9th Cir.1983) ("[T]he mere fact that an [action] is frivolous does not of itself establish bad faith" sufficient to permit a district court to impose sanctions under section 1927). For the purposes of Section 1927, bad faith "is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *In re Keegan Mgmt. Co. §. Lit.*, 78 F.3d 431, 436 (9th Cir. 1996) (citations omitted). "Reckless, nonfrivolous filings, without more, may not be sanctioned." *Id.*

Rauw rests most of his argument for Section 1927 sanctions upon two words in a declaration of Lloyds' attorney, Erwin Adler, that was filed with the court August 23, 2006. *See* Docket No. 70, Erwin Decl., ¶ 5. In the declaration, provided to support an opposition to a motion to compel brought by another defendant, Adler states that "[u]ltimately, after [Lloyds] filed its action . . . the subcontractors became more tractable and starting [sic] providing [Lloyds] with certain information as a means of extricating themselves from the action. As a result of some of this *coerced cooperation*, [Lloyds'] forensic accountant was able to prepare a report . . ." *Id.* (emphasis added). Rauw points to the phrase "coerced cooperation" as clear proof of Lloyds' reckless conduct in naming him in the amended complaint. *See* Docket No. 112 at 8.

Rauw attributes far too much meaning to these words by considering them out of context. Taken in context, it is clear that Lloyds' attorney Adler is merely qualifying the nature of the cooperation of some subcontractors involved in the lawsuit. Rauw himself initially resisted giving any documents to Lloyds. *See* Docket No. 120, ¶¶ 5-9. Adler is simply explaining how some of the parties involved in the cleanup -- including Rauw -- conducted themselves prior to the lawsuit. While legal obligations imposed by a lawsuit may feel like "coercion," one is not "coerced" merely because one acts in accordance with one's legal obligations only after being sued.

As discussed above, Lloyds' amended request for declaratory relief was not filed frivolously because it did show some basis for naming Rauw in the complaint. Likewise, Rauw has failed to show *subjective* bad faith, which is required before sanctions under Section 1927 may be imposed. *Keegan,* 78 F.3d at 436 (quoting *New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298,

10

1306 (9th Cir. 1989) (emphasis added). Without proof of recklessness or bad faith, Rauw's claim under 28 U.S.C. 1927 is meritless.

### E.  The Court's Inherent Powers

Rauw's final argument urges this Court to use its inherent powers to impose sanctions for bad faith because, as Rauw claims, Lloyds had no basis to file its request for declaratory relief. *See* Docket No. 112 at 7. Rauw correctly recognizes the power of federal courts to *sua sponte* order sanctions, including fees, to discipline attorney misconduct. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991); *Zaldivar v. Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1991), *overruled on other grounds by* 496 U.S. 384 (1990). But "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44.

By amending its initial complaint to include Rauw and numerous other defendants, Lloyds' conduct falls squarely within its rights as a federal civil plaintiff and in no way approaches the behavior courts traditionally see as sanctionable. *See Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 258 (1975) (allowing a sanction of attorney fees for the "willful disobedience of a court order"); *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.*, 417 U.S. 116, 129 (1974) (imposing sanctions on a losing party that acted in "bad faith, vexatiously, wantonly or for oppressive reasons."). *Chambers*, a Supreme Court case cited by Rauw, identifies only three areas in which a court can exercise its inherent powers to impose attorney's fees.[8] The only area applicable to this case – bad faith – fails because, as discussed above, Lloyds investigated its amended complaint and Rauw provides no showing of subjective ill motive based upon one out-of-context phrase in a declaration. *See* Docket No. 70, Erwin Decl., ¶ 5.

### F.  Rauw's Objections to Declarations

As a side issue, the Court notes that Rauw has objected to numerous statements in the

---

[8]Those three areas are 1) when a party's litigation directly benefits others (the "common fund exception"), 2) disobeying a court order and 3) for acting "in bad faith, vexatiously, wantonly, or for oppressive reasons." *See Chambers*, 501 U.S. at 45-46.

11

declarations of both Erwin Adler, Lloyds' attorney, and Kimberly Becker, Lloyds' forensic accountant, that were used to support Lloyds' opposition to Rauw's motion for sanctions. *See* Docket Nos. 121, 122. Since none of the statements objectionable to Rauw was used in determining the merit of Rauw's sanction motion, these objections are overruled as moot.

**G.    Lloyds' Motion for Sanctions Against Rauw**

In its opposition papers, Lloyds seeks sanctions against Rauw based on its assertion that Rauw's motion for sanctions was entirely baseless. *See* Docket No. 115 at 21. As mentioned above, sanctions under Rule 11 are "an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs Pension Trust*, 859 F.2d at 1345.

**1.    Rule 11 sanctions**

Rule 11 contains strict procedural rules to afford an opposing party the opportunity to withdraw or correct an offending paper. FED. R. CIV. P. 11(C)(1)(A). A Rule 11 motion must also be filed "separately from other motions or requests." *Id.* Although Lloyds' request for Rule 11 sanctions was neither made separately nor with any chance of affording Rauw 21 days to respond, "[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001). Thus it must be determined whether Rauw's motion itself violates any of the provisions of Rule 11(b).

Lloyds offers no evidence that Rauw filed his Rule 11 motion for an improper purpose. Rauw has not repeatedly filed motions or requests for hearings, nor is there any proof Rauw has intentionally dragged on this litigation. The case, in fact, is in the settlement stage. *See* Docket No. 108. A significant part of Rauw's motion is based upon the assertion that Lloyds did not conduct a reasonable pre-filing inquiry before requesting declaratory relief on January 12, 2006. *See* Docket No. 112 at 4-7. Because this assertion is based on little more than two comments by Lloyds'

12

attorney,[9] it is admittedly weak. But while a weak claim, it is still a claim "warranted by existing law." Additionally, Rauw may be correct in asserting that it would have been more proper for Lloyds to wait for the forensic accountant's preliminary report before filing any pleading.

As mentioned above, there is evidence that, by waiting for the forensic accountant's preliminary report, Lloyds would have possessed more – and more accurate – information on which to base a pleading. *See* Docket No. 70, Adler Decl. at 2-5. This fact demonstrates that Rauw's allegations of a lack of pre-filing inquiry are not totally baseless. Rauw's motion further claims that the entire case "began as, and has always been about, an insurance coverage dispute between Lloyds and [ISCOP]," suggesting that Rauw had little, if anything, to do with the underlying complaint and should not have been dragged into the lawsuit. *See* Docket No. 112 at 1. Lloyds counters this assertion by explaining that Rauw was a "fiduciary" of Lloyds and knew exactly who was getting paid and for what type of work. *See* Docket No. 115 at 14. Rauw responds by pointing to the lack of information that would establish Rauw as a central figure in the payment process related to the mudslide cleanup project. *See* Docket No. 118 at 3-5. This factual denial is warranted because Lloyds provides very little evidence that sheds light on Rauw's exact role in the payment process.[10]

### 2.      28 U.S.C. 1927

As noted above, a district court may impose sanctions under section 1927 only on a showing of an attorney's recklessness or bad faith. *See Zaldivar*, 780 F.2d at 829-32. Lloyds claims Rauw acted either recklessly or in bad faith by requiring Lloyds to incur costs to defend itself against Rauw's sanction motion. As mentioned in the previous section, the motion was not filed for any improper purpose, nor was it completely devoid of evidentiary support or unwarranted by existing law.

---

[9] *See* Docket Nos. 70, Erwin Decl., ¶ 5, 113, Ex. E.

[10] A letter from Adler to Edward Anaya, Rauw's attorney, sets forth some clauses in Rauw's contract with Lloyds' agent, but even these clauses are vague as to Rauw's role in the financial duties of the project. *See* Docket No. 116, Ex. K.

13

**H.     Lloyds' Objections to Declarations**

To counter Rauw's objections to its declarations, Lloyds has filed a motion to strike both new legal issues raised in Rauw's reply and certain statements in the declarations of Rauw and his attorney, Jane Curran Pandell. *See* Docket No. 133. In addition to being improperly noticed,[11] Lloyds' self-styled "motion to strike" is construed by the Court as a surreply not authorized by the Local Rules, which state that "once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval." N.D. CAL. CIV. R. 7-3(D).

## CONCLUSION

Accordingly, Rauw's motion for sanctions [Docket No. 111] is DENIED. Lloyds' motion for sanctions against Rauw [Docket No. 115] is also DENIED.

IT IS SO ORDERED.

September 18, 2007

_Saundra B Armstrong_
Saundra Brown Armstrong
United States District Judge

---

[11] *See* N.D. CAL. CIV. R. 7-2.

14